**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**EDUARDO FUENTES SANTIESTEBAN,**

Petitioner,

v. Civil Action No. **3:26CV644 (RCY)**

**JEFFREY CRAWFORD, *et al.*,**

Respondents.

**MEMORANDUM OPINION**

Eduardo Fuentes Santiesteban ("Petitioner"), proceeding *pro se*, is an alien who is present in the United States without admission. He filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). Petitioner alleges, *inter alia*, that his detention has been too lengthy and seeks release. ECF No. 1, at 6–8.[1] Respondents filed an Opposition. ECF No. 4. Petitioner filed a "Motion to Add Grounds," that is comprised of procedural background and further supporting argument. ECF No. 5. For the reasons set forth below, the § 2241 Petition will be DENIED.

## I. PROCEDURAL HISTORY

On July 9, 2026, Petitioner filed his § 2241 Petition claiming that his detention has been too lengthy. ECF No. 1, at 6–8. Petitioner indicated that he is a citizen of Cuba, that he was detained on September 11, 2025, and that he had not received a bond hearing. *Id.* at 6. According to Petitioner, a removal order was entered on March 11, 2026, and he did not appeal, so his removal period began on April 11, 2026. *Id.* at 5–6. Petitioner contends that the Immigration Court ordered

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

him removed to Ecuador; however, the Government later sought his removal to Cuba. *Id.* at 6–7. Petitioner contends that the "Cuba[n] Government is not accepting anyone right now." *Id.* at 7.

On July 23, 2026, Respondents filed an Opposition in which they assert that Petitioner is detained pursuant to 8 U.S.C. § 1231 and the § 2241 Petition should be dismissed because Petitioner has been detained less than ninety days, much less the presumptively reasonable six months, Petitioner has not shown that there is no significant likelihood of removal in the reasonably foreseeable future, and that compliance with *Zadvydas v. Davis*, 533 U.S. 678 (2001), in this case serves to provide Petitioner with due process. *Id.* at 1–2.

On July 27, 2026, Petitioner filed a "Motion to Add Grounds." ECF No. 5. The "Motion to Add Grounds" (ECF No. 5) will be GRANTED to the extent that the Court considers the arguments therein.

## II. FACTUAL BACKGROUND

Although Petitioner provides factual information in his § 2241 Petition and his "Motion to Add Grounds," the Court notes that such information is incomplete. The Court instead relies on the more fulsome account provided by Respondents.

> 5. Petitioner is a 32-year-old native and citizen of Cuba.
>
> 6. On December 31, 2022, U.S. Border Patrol Agents encountered Petitioner within the United States near the Calexico, California border with Mexico. The Border Patrol Agents determined that Petitioner had unlawfully entered the United States from Mexico at a time and place other than as designated by the Secretary of [the Department of Homeland Security ("DHS")]. The same day, DHS paroled Petitioner into the United States due to lack of bed space. The parole automatically terminated on March 31, 2023.
>
> 7. On April 25, 2023, Petitioner filed an application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture with the U.S. Citizenship and Immigration Services ("USCIS").
>
> 8. On November 18, 2024, Petitioner filed for an application to register permanent residence or adjust status based on the Cuban Adjustment Act with USCIS.

9. On February 23, 2025, Harrisonburg Police Department arrested and charged Petitioner with Driving while Intoxicated and Possession of a Schedule I/II Controlled Substance.

10. On September 3, 2025, the Rockingham Circuit Court convicted Petitioner of Driving while Intoxicated and Possession of a Schedule I/II Controlled Substance. Petitioner was sentenced to 90 days imposed with 90 days suspended and supervised probation.

11. On September 14, 2025, [Enforcement and Removal Operations ("ERO")] interviewed Petitioner in Rockingham Harrisonburg Regional Jail. ERO issued an I-200, Warrant of Arrest of Alien after establishing alienage and removability through the interview.

12. The same day, DHS issued and served Petitioner a Notice to Appear and charged him with being removable from the United States under 8 U.S.C. § 1182(a)(7)(A)(i), as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under regulations issued by the Attorney General under section 1181(a) of this title.

13. Petitioner's application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture and application to register permanent residence or adjust status based on the Cuban Adjustment Act were thereafter transferred from USCIS to the Immigration Court.

14. On March 3, 2026, DHS made a motion to pretermit Petitioner's application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture based on the Asylum Cooperative Agreement with Ecuador. The Immigration Judge granted the DHS's motion to pretermit Petitioner's asylum application and further denied Petitioner's application to register permanent residence or adjust status because Petitioner was statutorily ineligible. The Immigration Judge ordered Petitioner removed to Ecuador and in the alternative Cuba. Petitioner reserved appeal.

15. On June 4, 2026, DHS filed a motion to reopen proceedings for the Immigration Court to adjudicate Petitioner's application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture.

16. On July 1, 2026, the Immigration Judge denied Petitioner's applications for relief and ordered him removed from the United States to Cuba. Petitioner waived appeal of the Immigration Judge's decision. The removal order became administratively final.

17. On July 7, 2026, DHS served Petitioner with a Notice of Removal to Mexico. Petitioner did not claim fear of being removed to Mexico.

18. On July 8, 2026, Petitioner was transferred to the Alexandria Staging Facility in Alexandria, Louisiana to stage for removal. Petitioner was originally scheduled for a charter flight on July 30, 2026, to Cuba.

> 19. Due to the currently pending habeas petition and the District Court's resulting Memorandum Order, ICE transferred Petitioner back to Virginia and ICE's removal efforts have paused.
>
> 20. Upon resolution of the habeas petition, ERO anticipates being able to effectuate Petitioner's removal as there are no institutional barriers preventing Petitioner's removal to Cuba.

ECF No. 4-1 ¶¶ 5–20.

## III. STANDARD OF REVIEW

### A. Habeas Petitions

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. § 1231 and *Zadvydas*

8 U.S.C. § 1231[2] governs the detention and removal of aliens subject to final orders of removal. Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall

---

[2] Providing, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed
(1) Removal period
(A) In general
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")

* * *

(2) Detention
(A) In general
During the removal period, the Attorney General shall detain the alien[.]

be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A). An alien not removed during the 90-day removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides allowance for the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation.'" *Id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id*. But if an alien is detained beyond six months, the reasonable presumption no longer exists. At that point, if the alien makes a *prima facie* showing "'that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford*, No. 1:13-cv-

8 U.S.C. § 1231(a)(1)–(2).

1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

## IV. ANALYSIS

Here, Petitioner has only been detained on the final order of removal since July 1, 2026, which is less than two months, and far less than the presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 701.[3] Additionally, Petitioner has not met his burden to show that there is not significant likelihood of removal in the reasonably foreseeable future. Petitioner contends that on July 9, 2026, he was taken to Louisiana to "deport him to Cuba but again they failed because Cuba . . . [is] not accepting anyone right now." ECF No. 5, at 2. This is not what the record reflects. Instead, removal efforts were paused because of Petitioner's filing of this habeas action and the Court's order prohibiting further transfer or removal. ECF No. 4, at 4 (citing ECF No. 4-1 ¶¶ 18–19). To the contrary, Respondent explains that the only impediment to Petitioner's removal to Cuba is his pending habeas in this Court. ECF No. 4-1 ¶¶ 19–20. All that remains is for the Court to lift its injunction on further transfer and removal, and Petitioner's final order of removal can be effectuated. *See id.*

Because Petitioner's removal is patently imminent, the Court easily finds that Petitioner's removal is likely to occur in the reasonably foreseeable future, *Zadvydas*, 533 U.S. at 701, and therefore the Court must deny the § 2241 Petition, vacate the order prohibiting further transfer, and permit the Government to move forward with effectuating Petitioner's final removal order.

---

[3] This is the day that the Immigration Judge denied Petitioner's applications for relief and ordered him removed from the United States to Cuba. ECF No. 4-1 ¶ 16. Because Petitioner waived appeal of the Immigration Judge's decision, the removal order became administratively final that day. *Id.*

## V. CONCLUSION

The § 2241 Petition (ECF No. 1) will be DENIED. The Court will VACATE the portion of the Memorandum Order entered on July 16, 2026, which prohibited Respondents from removing or transferring Petitioner from this District.

An appropriate Final Order will issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 2, 2026
Richmond, Virginia